HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLES A. KNIGHTEN,

             Plaintiff,

   v.

MARUBENI AMERICA, INC., d/b/a/ GAVILON GRAIN, LLC, d/b/a KALAMA EXPORT, LLC.

             Defendants.

CASE No. 3:14-CV-05860-RBL

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      THIS MATTER is before the court on Defendant Marubeni America's Motion for Summary Judgment [Dkt. #17]. Plaintiff Charles Knighten is a long time Marubeni employee. He claims that in 2006 he was diagnosed with Post-Traumatic Stress Disorder caused by a past military sexual trauma. Knighten currently works as a locomotive switchman at Marubeni's Kalama Export facility. In 2008, Knighten filed an employment discrimination suit against the facility's previous owners, which was settled and dismissed with prejudice by this Court in 2009. Knighten voluntarily moved from the maintenance department to the production department in 2011. In 2012, Knighten claims that, for discriminatory and retaliatory reasons, Kalama denied him two overtime opportunities.

      Knighten sued, asserting claims under the Americans with Disabilities Act and the Washington Law Against Discrimination, for disability discrimination, failure to accommodate a disability, hostile work environment, and retaliation. Kalama seeks summary judgment, claiming Knighten cannot establish any of the required elements of his claims. Kalama argues

that even if Knighten could establish a prima facie case, Knighten's claims nonetheless fail because Kalama established legitimate non-discriminatory reasons for its actions and there is no evidence that these reasons are pretextual.

**I.     FACTS**

Knighten began working for Kalama's maintenance department in 1983. [Dkt #18 Exhibit B at 8]. He has periodically requested and received medical leave for PTSD treatment. [Dkt #1 Exhibit A at 3]. Knighten has a long, documented history of conflict with his maintenance supervisors and coworkers; he has received two suspensions and five warnings or complaints. In 1987, Knighten received a written warning for incomplete work and a confrontation with his lead. [Dkt #20 Exhibit 2]. In 2007, a coworker complained that Knighten was sleeping during work hours. [Dkt #18 Exhibit B, at 92–93].

Due to personal disagreements with his maintenance supervisor, Gary Carlson, and his coworker Mark Lydic, Knighten chose to avoid both individuals and admittedly continues to turn his back to them while in the same room. [*Id.* at 40–41]. Knighten once yelled an obscenity at Lydic in response to Lydic placing his hand on Knighten's shoulder in apology. [*Id.* at 23]. At some point Knighten witnessed Lydic placing his head on Carlson's shoulder and saying, "oh, Gary" in a joking manner while recounting a recent fishing expedition. [Dkt #18 Exhibit B at 62–64]. Knighten claims the sight of two male friends displaying affection in the workplace likely aggravated his PTSD. [*Id.* at 69–71].

In May, 2011 Knighten requested a promotion to lead in the maintenance department. Kalama denied his request because due to Knighten's poor relationships with management and coworkers in the department. [Dkt #20 at 3]. Kalama instead promoted Lydic to lead. Knighten argues that because he had seniority over Lydic at that time, he was entitled to the promotion. He also claims Lydic's promotion violated Kalama's policy prohibiting family members from supervising each other because Lydic's son-in-law became his supervisor. [Dkt #18 at 66].

That same month, Knighten voluntarily transferred from the maintenance department to a less physically demanding position in the production department, where he continues to work today. [Dkt #20 at 3]. Lydic asked him to remove his belongings from his former maintenance

locker because the maintenance employees needed the space. [Dkt #17 at 18]. Knighten contends there was ample space because Kalama recently expanded the maintenance storage. [Dkt #20 at 4].

Knighten was a senior employee in the maintenance department but he lost his seniority status when he transferred to the production department. Under the 2009 union agreement, an employee who transfers between maintenance and production restarts seniority in the new department on his or her transfer date. [Dkt #18 Exhibit H].

In 2012 Kalama denied Knighten's overtime bid for the production department and instead gave the overtime to a more senior employee. [Dkt #18 Exhibit D]. In response, Knighten filed a union grievance claiming that he was the most senior in the department. [*Id.*]. Two days later, plant supervisor Steve Oakes responded to Knighten's complaint in writing, explaining that Knighten was no longer a senior employee after his transfer to the production department. [Dkt #18 Exhibit E]. Oakes apologized for the delay in posting the updated seniority list and the grievance was dismissed. [*Id.*].

In 2012, Kalama denied Knighten's overtime bid for a job back in the maintenance department. [Dkt #18 Exhibit F]. Knighten again filed a union grievance, alleging he was a senior qualified employee improperly denied overtime. [*Id.*]. Oakes responded in writing within a week, explaining Knighten was no longer eligible to work in maintenance, due to his poor relationships in the department. [Dkt #18 Exhibit G]. Nonetheless, Kalama paid Knighten for the overtime he did not work and the grievance was dismissed. [Dkt #18 Exhibit B at 50]. Knighten challenges not only his overtime rejection but also Oakes' resulting determination that he is no longer eligible to work in maintenance.

In 2013, Lydic complained to management about Knighten calling him a "squirrel" behind his back. [*Id.* at 21]. Knighten did not deny the accusation but rather explained that "if [Lydic]'s not there, then no harm, no foul towards him personally." [*Id.* at 43:7–8]. During the same year, Knighten claims Lydic asked him if he was 'hitting on him'. [*Id.* at 67]. Knighten contends he has since felt uncomfortable alone with Lydic and will leave the room whenever Lydic comes in. [*Id.* at 37].

Knighten sued in 2014. Knighten asserted four causes of action against Kalama under the ADA and WALD: (1) Kalama discriminated against him by denying his overtime and promotion requests because of his PTSD, (2) Kalama failed to accommodate his PTSD by denying his request to work in the maintenance department, (3) Kalama created a hostile work environment by asking Knighten to remove his personal property, subjecting him to harassment and a public display of affection, and allowing relatives to supervise each other, and (4) Kalama retaliated against Knighten for his previous lawsuit by denying his overtime and promotion requests. [Dkt #1 Exhibit A at 10–12]. Knighten seeks compensatory damages and special damages relating to lost wages and benefits, lost future earnings, emotional distress, humiliation, and loss of enjoyment of life. [*Id.* at 12].

Kalama seeks summary judgment on Knighten's ADA and WLAD claims for three reasons: (1) Knighten failed to prove he was disabled within the meaning of the ADA or WLAD, (2) Knighten's claims are unrelated to his purported disability, and (3) Kalama denied Knighten's promotion and overtime requests because Knighten is unqualified due to his lower seniority status and his inability to work with maintenance supervisors and coworkers. Kalama also argues Knighten received every accommodation he requested and he failed to prove that Kalama's reasons for its adverse actions are a pretext for discrimination.

## II.     DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary

judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

## B. Disability Discrimination Claim

Knighten asserts he is a senior employee qualified to work overtime in the production and maintenance departments. He also argues that because he had seniority over Lydic at the time he requested a promotion in the maintenance department, he was entitled to the position. Knighten claims Kalama discriminated against him for his PTSD by denying the promotion and the overtime requests.

Kalama seeks summary judgment, arguing Knighten did not suffer from a condition substantially limiting a major life activity, as required under the ADA and WLAD. Kalama also argues Knighten was not qualified for a promotion or overtime in the maintenance department because he refuses to work with coworkers and management in that department. Furthermore he is not qualified for overtime in the production department because he is not the most senior employee since his transfer.

Knighten disagrees with the ADA's definition of disability. He admits he refused to engage with the maintenance lead, Lydic and supervisor, Carlson. He argues he is a qualified employee and Kalama's denial was not based on his seniority status because the updated seniority list was not posted at the time.

To establish a prima facie case of disability discrimination, Knighten must show (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) he suffered an adverse employment action due to his disability. *See Daniel v. Boeing Co.*, 764 F.Supp 1233, 1241 (W.D. Wash. 2011) *citing Sanders v. Arneson Prods. Inc*., 91 F.3d 1351, 1353 (9th Cir. 1996).

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). A major life activity includes functions such as caring for oneself, performing manual tasks, walking, seeing, hearing,

breathing, learning, and working. 29 C.F.R. § 1630.2 (i); *see also Coons v. Sec'y of the United States Dep't of the Treasury*, 383 F.3d 879, 885 (9th Cir. 2004). To substantially limit a major life activity, an individual must be significantly restricted "as compared to the condition, manner or duration under which the average person" can perform the same activity. *Coons*, 383 F.3d at 885.

Knighten has not presented direct evidence of discrimination, so he must raise a triable issue of fact that Kalama's actions were motivated by discrimination. *See Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013). If he establishes a prima facie case of discrimination, the burden shifts to Kalama to show a legitimate, nondiscriminatory reason for the adverse action. *See McDonnell Douglass Corp. v. Green* 411 U.S. 792, 802–03 (1973); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 49–50 (2003). If Kalama offers a nondiscriminatory reason, Knighten must then demonstrate the reason is pretextual. *See McDonnell Douglass*, 411 U.S. at 804. Washington courts follow the *McDonnell Douglass* burden-shifting framework for WLAD discrimination claims. *Dumont v. City of Seattle*, 200 P.3d 764, 862 (Wash. Ct. App. 2009).

Knighten's disability discrimination claim is entirely devoid of substance. There is no evidence that Knighten's alleged PTSD substantially limits a major life activity. Knighten's PTSD does not cause his work conflicts; rather he admits he dislikes Lydic and Carlson on a personal level. Even if Knighten were disabled within the meaning of the ADA, he is not a qualified employee. He is not the most senior in the production department because his seniority ended on his transfer date. The fact that the updated seniority list was not yet posted is irrelevant since the 2009 union agreement clearly stated the company's policy regarding transfers. Knighten is not qualified to work in maintenance because he admittedly refuses to interact with department management. Furthermore, and in any event, there is literally no evidence supporting an inference that Kalama denied Knighten's overtime requests *because of* his PTSD. Instead, Kalama offered legitimate, logical, demonstrably true, nondiscriminatory reasons for its denials. Knighten has not and cannot establish that those reasons were

pretextual. Kalama properly denied Knighten the promotion and the overtime because of his poor relationships in the department.

Knighten cannot meet his burden of establishing the prima facie elements of his employment discrimination claim. Even if Knighten could prove his claim, he nonetheless failed to show that Kalama's legitimate business reasons are pretextual. Kalama's Motion for Summary Judgment is GRANTED and Knighten's disability discrimination claim is DISMISSED with prejudice.

### C.     Failure to Accommodate Claim

In 2012, Knighten requested overtime in the maintenance department after he voluntarily transferred to the production department. Kalama denied Knighten's request and informed him he was no longer eligible to work in maintenance due to his poor relationships with management and coworkers. Knighten argues Kalama failed to accommodate his disability by denying him the opportunity to work in the maintenance department.

Kalama seeks summary judgment arguing Knighten received every reasonable accommodation relating to his PTSD. Kalama also emphasizes that Knighten voluntarily left maintenance and his personality conflicts were the reason for management's decision not to allow him back in the department.

Knighten admits Kalama granted his every request for leave for PTSD treatments. He also acknowledges his poor working relationships in maintenance. He nonetheless argues Kalama improperly denied him the accommodation of working in the maintenance department.

To establish a prima facie case of accommodation Knighten must show he is (1) disabled within the meaning of the ADA, (2) a qualified individual, able to perform the essential functions of the job with reasonable accommodation, and (3) suffered an adverse action because of his PTSD. *See Samper v. Providence St. Vincent Medical Center*, 675 F.3d 1233, 1237 (9th Cir. 2012) *citing Allen v. Pacific Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003); *see also* 42 U.S.C § 12112(a), (b)(d)(A). The court engages in a two part test to determine if an individual is qualified; first examining whether a person "satisfies the requisite skill, experience, education and other job-related requirements of the position" and second

determining "whether the individual can perform the essential functions… with or without a reasonable accommodation." *Samper* 675 F.3d at 1237, *citing Bates v. United Parcel Service Inc.,* 511 F.3d 974, 990 (9th Cir. 2007).

Washington courts generally look to federal case law to interpret WLAD. *Kumar v. Gate Gormet Inc.*, 325 P.3d 193, 197 (Wash. 2014). Under WLAD, an employee is similarly qualified if he or she is able to perform essential job functions with or without reasonable accommodation. *Davis v. Microsoft Corp.*, 37 P.3d 333, 336 (Wash. Ct. App. 2002).

There is no evidence Kalama denied Knighten any reasonable accommodation relating to his PTSD. Kalama granted all of Knighten's requested accommodations for extended medical leave. When Knighten returned to work, Kalama gave him the exact same position, at his same rate of pay, with the same working hours.

Knighten argues the accommodation he requests is to work in the maintenance department. Knighten's PTSD does not require him to work in maintenance. He voluntarily transferred out of the maintenance department. Knighten is not a qualified employee. He cannot perform the essential function of interacting with coworkers and supervisors in a non-disruptive and non-abusive fashion. Furthermore, as discussed above, Knighten is not disabled within the meaning of the ADA.

Knighten cannot establish that Kalama denied him any accommodation for his PTSD. Kalama's management properly determined that Knighten was not eligible to work in maintenance for legitimate nondiscriminatory reasons. Kalama's Motion for Summary Judgment is GRANTED and Knighten's accommodation claim is DISMISSED with prejudice.

**D.      Hostile Work Environment Claim**

Knighten claims Kalama created a hostile work environment by harassing him in the following four ways: (1) Lydic asked Knighten to remove his belongings from the maintenance locker after he transferred out of the department, (2) Knighten witnesses a public display of affection between Lydic and Carlson, (3) Lydic once accused Knighten of 'hitting on him,' and (4) Kalama allowed Lydic to violate company policy by working under the supervision of his son-in-law.

Kalama seeks summary judgment on this claim because Knighten failed to provide evidence from which a reasonable trier of fact could find that he was harassed or that the purported harassment related to his PTSD. Kalama claims there is no evidence Lydic and Carlson's interaction was directed at Knighten, or that it had anything whatsoever to do with his PTSD. There is similarly no evidence that Lydic's accusing Knighten of "hitting on him" was related to his PTSD. Furthermore, Kalama argues Lydic asked Knighten to remove his belongings from maintenance because he no longer worked in that department and the space was reserved for people who worked there. Finally, Kalama asserts no finder of fact could conclude that Lydic working under a relative's supervision somehow targeted Knighten's PTSD.

Knighten contends that the maintenance employees had ample storage space, so it was unnecessary for him to remove his belongings. He also argues that Lydic willfully aggravated his PTSD with his comment and his interaction with Carlson.

To prevail on his hostile work environment claim Knighten must prove (1) he is disabled within the meaning of the ADA, (2) the harassment is unwelcome, (3) it was because of his disability, (4) it affected the terms or conditions of his employment, and, (5) it was imputable to Kalama. *See Robel v. Roundup Corp.*, 59 P.3d 611, 616 (Wash. 2002). There must a "nexus between the specific harassing conduct and the particular injury or disability." *Id.* at 617. Knighten must also prove the harassment was "severe or pervasive enough to create an objectively hostile or abusive work environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

Knighten's hostile work environment claim cannot survive under this standard. First, he is not disabled under the ADA. Second, there is no evidence of harassment, at all, much less any directed at or motivated by his PTSD. None of the conduct Knighten complains about was severe or pervasive enough to create an objectively abusive or hostile work environment. Neither, the employment of relatives, or Lydic's interaction with Carlson have anything at all to do with Knighten, much less his PTSD. A reasonable person would not perceive a request to clean out a locker after leaving a job as hostile or abusive conduct. Likewise, there is no

evidence that Lydic's one-time comment to Knighten was abusive or hostile under the circumstances. Third, there is no nexus between the purported harassment and Knighten's PTSD. Knighten claims Lydic's actions aggravated his PTSD but he fails to explain how a coworker's question or a friendly interaction between two other people has any connection to his past sexual trauma. Knighten fails to even argue that the locker incident or the employment of relatives is at all related to his PTSD. Fourth, Knighten fails to assert that any incident affected the terms and conditions of his employment.

Knighten's bare claim that he was harassed, and that the harassment related to his PTSD or to the terms and conditions of his employment is unsupportable as a matter of law. Kalama's Motion for Summary Judgment on this claim is GRANTED and it is DISMISSED with prejudice.

**E.      Retaliation Claim**

Knighten claims he engaged in a protected activity when he filed a prior discrimination lawsuit against Kalama in 2008. He argues that he suffered an adverse employment action when Kalama denied his overtime and promotion requests in 2011 and 2012. Knighten claims that Kalama denied these requests in retaliation for his previous lawsuit.

Kalama does not deny that Knighten's lawsuit was a protected activity, or that Knighten suffered an adverse employment action. Kalama nonetheless seeks summary judgement arguing that there is no causal link between the protected activity and the adverse action. Kalama claims that even if Knighten can establish a prima facie case he nonetheless failed to show that Kalama's non-discriminatory reasons for the denials are pretextual.

To establish a prima facie case of retaliation, Knighten must show (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal link between the two. *See Pardi v. Kaiser Found. Hosp.*, 389 F.3d 840, 849 (9th Cir. 2004) *citing Brown v. City of Tucson*, 336 F.3d 1181, 1186–87 (9th Cir. 2003). If Knighten proves the prima facie elements and Kalama offers a legitimate reason for the adverse action, then the burden shifts back to Knighten to show that the reason is pretextual. *Id.*

Knighten cannot establish the required causal link between the adverse employment action (2011 and 2012) and the protected activity (2008). Knighten's prior claims against Kalama's predecessor were settled and dismissed three years prior to his overtime and promotion denials. The claim that Kalama waited three years to deny him a promotion, and a fourth year to deny him two days of overtime in retaliation for his previous suit. Second, as discussed above, Kalama alleged a legitimate non-discriminatory reason for the denials and there is no evidence that the reason was merely pretextual.

Knighten has not met and cannot meet his burden of establishing that Kalama denied his promotion and overtime requests in retaliation for his prior lawsuit. Kalama's Motion for Summary Judgment in Knighten's retaliation claim is GRANTED and that claim is DISMISSED with prejudice.

## CONCLUSION

Kalama Export's Motion for Summary Judgment on all claims [Dkt. #17] is GRANTED, and Knighten's claims against Kalama Exports are DISMISSED with prejudice.

**IT IS SO ORDERED.**

DATED this 30th day of January 2017.

Ronald B. Leighton
United States District Judge